In the Matter of the Estate of JAMES CARL GRANT, Deceased.

Surrogate's Court, Delaware County, September 12, 1931.

*F. W. Youmans*, for the petitioner.

*John P. Grant*, for the respondent.

O'CONNOR, S. Orrin B. Grant, late of the town of Stamford, Delaware county, N. Y., died testate, and in his will he left a legacy of about $6,500 to James Carl Grant, an infant, who became thirteen years of age on January 12, 1931. Subsequently the National Bank of Stamford of Stamford, N. Y., was appointed guardian of the property of said infant in this State and still continues as such guardian, and the amount of the funds now in the hands of the National Bank of Stamford as such guardian is about the sum of $7,300.

James Carl Grant is the son of James K. Grant and Lula B. Grant. James K. Grant, the father, died in 1920 at Sapulpa, Okla., and Lula B. Grant, the mother, died in June, 1926, at Mulhall, Payne county, Okla., leaving a last will and testament in and by which she appointed her father, O. N. Hedges, executor of her estate and requesting that he be appointed guardian of her said son, James Carl Grant. Shortly after the death of said Lula B. Grant, Irene Grant, a sister of the said James K. Grant, was appointed general guardian of the person and property of said infant by the County Court of Creek county, Okla., but on application of said O. N. Hedges her appointment was revoked and said Hedges was appointed general guardian of the person and property of said infant, and still continues to act as such. Ever since 1926 James Carl Grant has resided with his grandfather at Mulhall, Payne county, Okla. The infant received a small legacy of about $1,700 from his father's estate, which the said guardian, O. N. Hedges, still has in his possession.

This is a proceeding commenced under subdivision 1 of section 184 of the Surrogate's Court Act by said O. N. Hedges to procure the issuance of ancillary letters of guardianship of the property of said infant in this State to be issued to him and to require the National Bank of Stamford to turn over to him the funds of said infant in its possession. Any objections to the form of the moving papers have been waived by the respondent, National Bank of

Stamford, and the parties have consented that the matter be considered on its merits.

The principal objections urged by the respondent to the granting of ancillary letters of guardianship to the petitioner are that the petitioner now has in his hands the sum of $1,376.91 belonging to said infant, proceeds of the legacy left him by his father, which is ample for his present support; that petitioner has not sufficient financial ability to properly care for the funds which are now in possession of respondent; that petitioner cannot procure safe investment for the funds in the State of Oklahoma and that it is not for the interests of said infant to require the respondent to sell the securities now held by it for said infant.

A commission was issued to the State of Oklahoma and all the testimony in the proceeding has been taken in the State of Oklahoma. A large amount of this testimony would be very relevant on the question as to whether the petitioner was a proper person to be guardian of the person of the infant but that question is not here. A great deal of the testimony taken has little relevancy to the question to be decided here, which is whether or not ancillary letters of guardianship should be granted to the petitioner. Section 185 of the Surrogate's Court Act provides in part as follows: " Where the surrogate is satisfied upon the papers presented, as prescribed in the last section, that the case is within that section, and that it will be for the ward's interest that ancillary letters of guardianship should be issued to the petitioner, he may make a decree granting ancillary letters accordingly." Whether the word " may," as used in that portion of the section above quoted, is mandatory or permissive, it is not necessary to decide. If the surrogate decides that it will be for the infant's interest that ancillary letters of guardianship should issue to the petitioner, it necessarily follows that he would make the decree.

The testimony taken on said commission in the State of Oklahoma shows that the petitioner is a farmer, owning 160 acres of land near Mulhall, Okla., with a certain amount of stock and personal property thereon, and in addition is the owner of about $1,100 of the stock of the Stillwater Building and Loan Association. His honesty and integrity are not questioned and are testified to by several residents of Mulhall and vicinity. His reports as guardian show that he has conserved the ward's property in the State of Oklahoma left by the father of James Carl Grant. It appears that James Carl Grant is living with his grandfather on the 160-acre farm, going to school and doing light farm work for his board. This school is from two to three miles distant from the farm and he has attended it regularly. This school has

evidently furnished adequate educational facilities for the infant up to the present time and in case he should require additional educational advantages in the future there is no reason to believe that the petitioner would not furnish him with same. While the income from the moneys left to the infant by his father has evidently been sufficient in the past for his needs, it is evident that demands in the future will exceed those in the past and that the income, at least from the funds now in the hands of respondent, can be used to advantage for the support and education of the infant. There is no question that the funds at the present time are safely invested by respondent and the estate of the ward properly safeguarded against loss. However, there is no reason to believe that the funds, if turned over to petitioner, will not be safely invested by him in the State of Oklahoma as he has practically the same opportunity for making investments there that the present guardian in this State has. Moreover, the estate of the infant will be properly protected by surety company bond presented with the petition herein, which bond has been approved by the court of Oklahoma which granted letters of guardianship of the person and property to the petitioner. Under these circumstances, there is no reason why the funds belonging to the estate of this infant should not be administered by one person. This, especially in view of the fact that the evidence establishes that the petitioner has the best interests of his ward at heart, and that he will continue, as he has in the past, to furnish his ward with a proper and suitable home, do whatever is necessary to protect and preserve the estate and use the income therefrom prudently and wisely for the benefit of his ward.

It may not be necessary for the respondent to sell the securities which it now holds as guardian, as the petitioner may, with the permission of the court, accept in lieu of cash the securities which the respondent now holds, and in that event the petitioner would have the same investment for the funds of the estate as the respondent now has.

The petitioner has satisfied this court that it will be for the ward's interest that ancillary letters of guardianship be issued to the petitioner.

An order may be made accordingly.